## WHITNEY v. FUCHS et al.
### No. 8119.

Court of Civil Appeals of Texas. Austin.
April 17, 1935.

Williams & Williams, of Austin, for appellant.

J. W. Wheeler, of Austin, for appellees.

McCLENDON, Chief Justice.

Whitney (with two others) was accommodation maker of a negotiable promissory note, payable to Farmers' State Bank of Thrall, upon which O. A. Stubbs was principal maker. The bank knew the accommodation character of the liability. The controlling question in the appeal is whether, under the following conclusions of fact and law of the trial court, Whitney was released from liability:

"5. After the maturity of said note, O. A. Stubbs called at said bank and requested Nolte to grant him further time in which to pay said note and specially requested him to postpone its collection another thirty days, and Nolte replied that the bank would let it go over or 'let it ride' another thirty days. Thereafter, several similar conversations were had between O. A. Stubbs and said Nolte; one time Stubbs asking sixty days and one time fifteen days, and each time Nolte told Stubbs that the bank would let it go over or 'let it ride' for the time requested. None of said accommodation makers ever consented to any extension of said note."

"2. No binding agreement has ever been made by The Farmers State Bank of Thrall, Texas, or any other holder of said note, with the principal obligor, O. A. Stubbs, to extend the note for a definite time."

There is no controversy regarding the applicable legal principles. See Shults v. Krauskopf (Tex. Civ. App.) 286 S. W. 544; 5 Tex. Jur., pp. 826, 827, §§ 186, 187; 50 C. J., pp. 136–138, §§ 227, 228. The only question presented arises over the interpretation of the transaction detailed in the fifth fact finding, namely, whether (on the one hand) it evidenced a binding agreement on the part of the bank to extend the time of payment of the note for the several stated periods, and a like binding agreement on the part of Stubbs that he would forego the privilege of paying within the extended period, or (on the other hand) whether it evidenced a merely unilateral promise of forbearance. It may be conceded that all the elements of a binding contract can be imported in the transaction by implication. This would require that the request of Stubbs be given the implied meaning of an offer on his part to extend or renew the note for the stated periods, and that the reply of Nolte that "the bank would let it go over or 'let it ride'" implied an acceptance of that offer. If we concede the validity of these implications, they are not the necessary and only ones to be drawn from the language which the parties employed. In interpreting language, it is always proper to consider the setting in which it is placed. To paraphrase a well-stated application of this doctrine to the law of contracts: Courts may avail themselves of the same light which the parties enjoyed when the transaction occurred, and may place themselves in the same situation as the parties to the transaction, in order that they may view the circumstances as those parties viewed them, and so judge the meaning of the words and the correct application of the language and the thing described. Lockwood v. Ohio River Ry. Co. (C. C. A.) 103 F. 243, quoted with approval in Stevens v. Galveston, H. & S. A. Ry. Co. (Tex. Com. App.) 212 S. W. 639. The

bank knew that as between Stubbs and the other three joint makers he was principal debtor, and they were accommodation (surety) debtors. It was charged with knowledge that a binding agreement with Stubbs for a definite extension of time would release the nonconsenting accommodation makers. In order to give the transaction appellant's interpretation, we must import therein a mutual intention on the part of Stubbs and the bank to make a contract of extension binding upon them alone, the effect of which would be to release his comakers of all liability. If the language employed were susceptible of no other construction, it would be our duty to give it that meaning, regardless of its effect upon the rights of the parties. If 'it does not necessarily import that construction, or admits of ambiguity in this regard, its true meaning, under all the circumstances, becomes a fact question which is concluded by the trial court's interpretation and judgment. We hold that the trial court did not err in this regard.

We have given careful consideration to other questions presented, and conclude that they are without substantial merit.

The trial court's judgment is affirmed.